IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| Gregory Sullenberger, | ) |
|---|---|
| Plaintiff, | ) |
| -vs- | ) Civil Action No. 06-430 |
| Sergeant Clifford Jobe, Lieutenant Byron Locke, and Captain John Gallaher, | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## **SYNOPSIS**

Plaintiff brought this lawsuit pursuant to 42 U.S.C. §1983. Currently before the Court is Defendants' motion for summary judgment which was filed along with a statement of facts and a brief in support of their motion.[1] (Docket entry nos. 22, 23 and 24). Plaintiff responded with a brief of its own and a counterstatement of facts. (Docket entry nos. 28 and 29). Upon analysis and consideration of each submission, and as set forth in my Opinion below, I am granting the Defendants' motion for partial summary judgment.

---

[1] Plaintiff Sullenberger specifically alleges that Defendants violated his First and Fourteenth Amendment rights and engaged in a civil conspiracy. Defendants' motion for summary judgment only addresses Sullenberger's First Amendment claims, and thus, appears to be a motion for partial summary judgment. Thus, I will consider Defendant's motion as one for partial summary judgment.

1

**OPINION AND ORDER OF COURT**

**I. Factual and Procedural History**

Plaintiff currently works as a police officer for the Pennsylvania State Police ("PSP"). At all times relevant to this lawsuit, Plaintiff served as an instructor for the Bureau of Training and Education, teaching various courses. During his tenure as an instructor he began to receive training on collision investigation, and by all accounts he became specialized in collision investigation, and was even given the title of "collision investigation training coordinator." (Sullenberger Depo. p. 10). According to Plaintiff, as the collision investigation training coordinator, he wrote the lesson plans for the collision investigation training classes and taught the "higher level" classes. (*Ibid*.)

Plaintiff claims that in November of 2003 he complained to his direct supervisor, Sergeant Jobe, that Lieutenant Locke had changed the curriculum of the collision investigation training in such a way that the training did not meet federal National Highway Transportation Safety Administration guidelines. (Sullenberger Depo. p. 15-16). According to Plaintiff, he repeatedly asked Sergeant Jobe if the Lieutenant would meet with him to discuss the situation, but no meeting ever took place. (Sullenberger Depo. p.16-18). In March of 2004, while conducting a training in Hershey, Plaintiff broke rank and spoke with Captain Gallaher about his concerns with the changes Lieutenant Locke made to the collision investigation training curriculum. (Sullenberger Depo. p. 20). Several days after Plaintiff spoke with Captain Gallaher, Sergeant Jobe and Lieutenant Locke attempted to meet with Plaintiff to discuss his decision to break the chain of command by talking to Captain Gallaher about his concerns with the curriculum. (Locke Depo. p. 77-78; Jobe Depo. p. 64-66).

In May of 2004, Plaintiff requested five hours of travel time for a training he was conducting in Philadelphia, PA. Plaintiff filed the necessary paperwork to obtain payment for these five hours, but

an internal investigation concluded that Plaintiff fraudulently submitted a timesheet for these five hours. Plaintiff received a fifteen-day suspension, which was later reduced to a seven-day suspension, and Plaintiff was permanently transferred to Troop A.

Plaintiff claims the internal investigation, which ultimately led to his temporary suspension and permanent transfer, was done in retaliation for him: (1) expressing his disapproval of the curriculum changes made by Lieutenant Locke, and (2) breaking the chain of command by sharing his concerns with Captain Gallaher. He claims First Amendment protection for the statements he made to Captain Gallaher, but Defendants disagree.

## **II. Summary Judgment Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Knabe v. Boury*, 114 F.3d 407, 410 (3d Cir. 1997) (citing F.R.Civ.P. 56). A fact is material when it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

When considering a motion for summary judgment, the courts examine the facts in the light most favorable to the non-moving party. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at

trial. *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986).

### III. Claims pursuant to 42 U.S.C. §1983 for alleged violations of the First Amendment

Section 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress. . . .

42 U.S.C §1983.

A plaintiff has to establish two criteria in order to prevail on a §1983 claim: first, he must prove that the activity in question is protected by the First Amendment; and second, he must prove the protected activity was a substantial factor in the alleged retaliation claim. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006).

Turning to the first criteria, a public employee's statements are protected activity under the First Amendment if, when making the statements, the employee speaks as a private citizen. *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 1958, 164 L. Ed. 2d 689 (2006). A public employee does not speak "as a citizen" when he makes a statement pursuant to his official duties. *Hill*, 455 F.3d at 242, quoting *Garcetti,* 126 S. Ct. at 1960. In addition, the employee's speech must involve a matter of public concern. If the employee-plaintiff spoke as private citizen on a matter of public concern, the court next determines whether the relevant government entity had adequate justification for treating the employee differently from any other member of the general public. *Hill*, 455 F.3d at 241-242, quoting *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 1958, 164 L. Ed. 2d 689 (2006). All of these are questions of law for the court. *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001).

Once all elements of the first criteria are established, the second criteria is met if the plaintiff can establish the protected activity was a substantial motivating factor in the alleged discriminatory action. However, the government can rebut the plaintiff's claim by demonstrating it would have reached the same decision even in the absence of the protected conduct. *Ibid.* The elements comprising the second criteria present questions of fact for the jury. *Ibid.*

Turning to the instant matter, the first question is whether Plaintiff's statements to Captain Gallaher about the curriculum as revised by Lieutenant Locke were protected by the First Amendment. If Plaintiff made these statements as a private citizen, and did <u>not</u> make them pursuant to his official duties, then his speech is protected under the First Amendment.

It is undisputed that Plaintiff, at the time of the relevant events, was a specialized instructor for the PSP. Plaintiff testified that as a specialized instructor he wrote lesson plans for classes he would teach. (Sullenberg Depo. p. 10). Captain Gallaher confirmed that one of Plaintiff's job duties was to write lesson plans and, in fact, he found that Plaintiff often failed to keep up with writing the lesson plans. (Gallaher Depo. p. 46-47). Captain Gallaher also testified that specialized instructors like Plaintiff would help develop curriculum by creating formal lesson plans based on the specialized courses the instructor would attend. (Gallaher Depo. p. 25-26).

Sergeant Jobe also indicated that Plaintiff made proposals as to what should be taught in terms of collision investigation and he would recommend certain training objectives. (Jobe Depo. p. 58-59). Sergeant Jobe also stated that Lieutenant Locke would need to approve Plaintiff's proposals and ultimately, Captain Gallaher would have a final decision on whether a proposed class or training session could go forward. (Jobe Depo p. 59).

According to Plaintiff's testimony, he requested a meeting with Lieutenant Locke to discuss the

changes the Lieutenant had made to the collision investigation curriculum which now failed to meet some of the national standards. (Sullenberg Depo. p. 15-16). However, Plaintiff said that despite several attempts to gain audience with the Lieutenant, a meeting did not take place. (Sullenberg Depo. p. 16-18). Plaintiff admits he broke rank by talking directly with Captain Gallaher about his concerns related to the Lieutenant's changes to the collision investigation curriculum. (Sullenberg Depo. p. 20). Although Captain Gallaher recalled having a discussion with Plaintiff, his recollection is that Plaintiff told him he wanted to expand the course offerings. (Gallaher Depo. p. 15). Captain Gallaher said that Plaintiff did not complain about Lieutenant Locke during their discussion, but Plaintiff did explain that he visualized his role as a collision investigation trainer as becoming a "major speciality" but Lieutenant Locke and Sergeant Jobe had a different perception of his role as a trainer. (Gallaher Depo. p. 20-21).

This testimonial evidence confirms that Plaintiff, as a specialist in the field of collision reconstruction, was charged with the responsibility to help develop the curriculum for collision reconstruction training. Accordingly, I find that Plaintiff expressed his concerns about the collision reconstruction curriculum pursuant to his official duties, and thus, his speech is not protected by the First Amendment. Having concluded as a matter of law that there is no First Amendment protection for Plaintiff's statements, there is no reason to consider the second criteria to determine whether the protected activity was a substantial factor in the alleged retaliation claim.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Gregory Sullenberger, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 06-430 |
| | ) |
| | ) |
| Sergeant Clifford Jobe, Lieutenant Byron Locke, | ) |
| and Captain John Gallaher, | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## **ORDER**

AND NOW, this 13th day of March, 2008, for reasons set forth in the accompanying Opinion, Defendants' Motion for Partial Summary Judgment with respect to Plaintiff's claim alleging violation of Plaintiff's First Amendment rights is granted. Plaintiff's claims under the Fourteenth Amendment and for civil conspiracy remain. A pre-trial settlement conference will be held on March 25, 2008 at 10:30 a.m. By no later than March 21, 2008, Plaintiff shall file a statement detailing his remaining claims and the facts supporting each remaining claim.

BY THE COURT:

s/ Donetta W. Ambrose
Donetta W. Ambrose,
Chief U.S. District Judge